IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICKY DIXON,<br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | MOTION TO VACATE<br>28 U.S.C. § 2255<br><br>CRIMINAL ACTION NO.<br>1:20-cr-296-6-JPB-CMS<br><br>CIVIL ACTION NO.<br>1:24-cv-99-JPB-CMS |

**FINAL REPORT AND RECOMMENDATION**

Movant Ricky Dixon, confined at FCI Morgantown in Morgantown, West Virginia, submitted a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate"). [Doc. 800]. In the Motion to Vacate, Dixon argues that (1) trial counsel was ineffective for failing to challenge the allegedly defective second superseding indictment ("SSI") as to Counts 29 and 62 ("Claim 1"); (2) trial counsel was ineffective for failing to object to the alleged constructive amendment of Counts 29 and 62 during Dixon's guilty plea hearing ("Claim 2"); and (3) that, in light of an intervening change in law, he is actually innocent of aggravated identity theft as charged in Count 29 of the SSI ("Claim 3"). [Doc. 800-1 at 1–15]. The Government filed a response, and Dixon filed a reply. [Docs. 986, 1070].

For the reasons stated below, I recommend that the Motion to Vacate [Doc. 800] be **DENIED**.

**I.     BACKGROUND**

Dixon was charged, along with fifteen others, in an SSI that the Grand Jury returned on August 10, 2021. [Doc. 290]. Dixon was charged with 22 counts. [*Id.*]. The charges stem from Dixon's conspiracy with others to submit false materials such as such as a false loan application, false IRS Form 941s, and false payroll spreadsheets to a financial institution to obtain Paycheck Protection Program loan funding. [*Id.* at 51–53, 72–73]. In one such submission, Dixon listed stolen personally identifiable information, including a social security number and date of birth, belonging to "S.R." [*Id.*].

On August 1, 2022, Dixon, pursuant to a plea agreement, pleaded guilty to one count of aggravated identity theft (Count 29) and one count of conspiracy to commit money laundering (Count 62). [Doc. 519-1]. On January 25, 2023, the Court sentenced Dixon to 100 months of imprisonment. [Doc. 624]. Dixon did not file a direct appeal. On January 4, 2024, Dixon filed the instant Motion to Vacate. [Doc. 800].

**II.    LEGAL STANDARD**

A motion to vacate, set aside, or correct sentence may be made "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "[C]ollateral review is not a substitute for a direct appeal . . . ." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (per curiam)) (internal quotation marks omitted). A § 2255 movant "has the burden of sustaining his contentions by a preponderance of the evidence." *Tarver v. United States*, 344 F. App'x 581, 582 (11th Cir. 2009) (per curiam) (quoting *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)).

In his Motion to Vacate, Dixon asserts three claims for relief. In Claim 1, Dixon argues that his trial counsel was ineffective for failing to challenge the allegedly defective SSI as to Counts 29 and 62. [Doc. 800-1 at 1–6]. According to Dixon, Count 29 of the SSI, which charges Dixon with aggravated identity theft,

3

fails to charge an underlying felony offense, because conspiracy to commit wire fraud does not qualify as a felony offense under 18 U.S.C. § 1028A(c). [*Id.* at 3]. Dixon also claims that Count 29 fails to charge that he knew that the means of identification at issue belonged to another person. [*Id.*]. Dixon further argues that Count 62 of the SSI, which charges Dixon with conspiracy to commit money laundering, fails to charge the essential element of "voluntarily." [*Id.* at 3–4].

In Claim 2, Dixon alleges that his trial counsel was ineffective for failing to object to the alleged constructive amendment of Counts 29 and 62 during Dixon's guilty plea hearing. [Doc. 800-1 at 7–11]. According to Dixon, counsel for the Government constructively amended the SSI during the plea hearing by stating elements of the offenses that differed from the elements of those offenses as listed in the SSI. [*Id.* at 9–10].

Finally, in Claim 3, Dixon argues that he is actually innocent of aggravated identity theft as charged in Count 29 of the SSI, based on an intervening change in the law. [Doc. 800-1 at 12–15]. According to Dixon, the Supreme Court's decision in *Dubin v. United States*, 599 U.S. 110 (2023), narrowed the scope of § 1028A, making him actually innocent of the aggravated identity theft offense charged in Count 29. [*Id.*].

**III.   DISCUSSION**

   *A.   Ineffective Assistance of Counsel*

Dixon's first two claims are for ineffective assistance of counsel. [Doc. 800-1 at 1–11.] I will first set forth the legal standard for ineffective assistance of counsel claims and will then discuss the claims in turn.

To demonstrate ineffective assistance of counsel, a convicted defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Wash.*, 466 U.S. 668, 687 (1984). As to the first prong of *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). That presumption is "even stronger" if a court is "examining the performance of an experienced trial counsel." *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000).

As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court may

consider either prong first and need not address the other "if the defendant makes an insufficient showing on one." *Id.* at 697.

The defendant, not the Government, "continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel." *Chandler*, 218 F.3d at 1315 n.15. "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the [defendant]." *Id.*

### 1. Claim 1

In Claim 1, Dixon alleges that his trial counsel "provided him with ineffective assistance of counsel by failing to conduct legal research, failing to properly examine [the] Second Superseding Indictment as to Counts 29, and 62, and failing to file a pre-trial Motion to Dismiss . . . as to Counts 29 and 62[.]" [Doc. 800-1 at 1]. Dixon claims that Count 29 of the SSI contained two fatal defects: (1) conspiracy to commit wire fraud does not qualify as an underlying felony offense under § 1028A(c); and (2) the SSI fails to charge that Dixon knew that the means of identification at issue belonged to another person. [*Id.* at 3]. Dixon also argues that Count 62 of the SSI was defective because it failed to charge the essential element of "voluntarily." [*Id.* at 3–4].

        *a.*      *Underlying Felony Offense*

According to Dixon, Count 29 of the SSI is fatally flawed because it fails to charge an underlying felony offense enumerated in § 1028A(c). [*Id.* at 3]. Dixon, however, withdrew this argument in his reply. [Doc. 1070 at 3]. This portion of Claim 1 is therefore moot.

        *b.*      *Knowledge That Means of Identification Belonged to Another Person*

Dixon next argues that Count 29 of the SSI is fatally defective because it fails to charge that Dixon knew the means of identification at issue belonged to another person as required by Eleventh Circuit precedent. [Doc. 800-1 at 3]. In support of this argument, Dixon cites to *United States v. Becerra-Rodriguez*, No. 21-10930, 2021 WL 5145248 (11th Cir. Nov. 5, 2021). [*Id.*] In *Becerra-Rodriguez*, the Eleventh Circuit explained that "[t]o obtain a conviction for violation of 18 U.S.C. § 1028A(a)(1), the government must prove, among other things, that 'the defendant knew that the means of identification at issue belonged to another person.'" *Becerra-Rodriguez*, 2021 WL 5145248, at *2 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009)).

*Becerra-Rodriguez* relied on the Supreme Court's decision in *Flores-Figueroa*. *Becerra-Rodriguez*, 2021 WL 5145248, at *2. In *Flores-Figueroa,* the Supreme Court held that the word "knowingly" in 18 U.S.C.

7

§ 1028A(a)(1) "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa*, 556 U.S. at 657. *Flores-Figueroa*, however, addressed the Government's burden of proof at trial to establish that a defendant charged with violating Section 1028A(a)(1) acted "knowingly." *Id.* It did not address or affect the standard that the Government must satisfy to sufficiently allege a violation of Section 1028A(a)(1) in an indictment. *See United States v. Prelogar*, 996 F.3d 526, 532 (8th Cir. 2021) (noting that the court had "upheld as sufficient an indictment that charged aggravated identity theft because, although the indictment did not plead knowledge as explained in *Flores-Figueroa*, it tracked the language of 18 U.S.C. § 1028A(a)(1)").

"The standard for whether an indictment sufficiently alleges a crime is not demanding. An indictment tracking the statutory language and stating approximately the time and place of an alleged crime is sufficient." *United States v. Moore*, 954 F.3d 1322, 1332 (11th Cir. 2020) (citing *United States v. Brown*, 752 F.3d 1344, 1353 (11th Cir. 2014)). Count 29 of the SSI satisfies this standard.

The language of 18 U.S.C. § 1028A(a)(1) provides: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced

8

to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). Count 29 of the SSI alleges, in relevant part, that Dixon "did knowingly possess and use, without lawful authority, a means of identification of another person, that is, a social security number and date of birth belonging to 'S.R.,' during and in relation to a felony offense, that is, Conspiracy to Commit Wire Fraud." [Doc. 290 at 53]. Count 29 of the SSI, therefore, accurately tracked the statutory language of 18 U.S.C. § 1028A(a)(1). Count 29 thus sufficiently alleged that Dixon violated 18 U.S.C. § 1028A(a)(1). [Doc. 290 at 53].

Because Count 29 of the SSI was not fatally defective for failing to charge that Dixon knew the means of identification at issue belonged to another person, counsel did not perform deficiently by failing to file a motion to dismiss on this basis. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance."); *Freeman v. Atty. Gen*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Dixon, therefore, cannot establish an ineffective assistance of counsel claim based on this argument.

    c. *Voluntarily*

Dixon next argues that Count 62 of the SSI is defective because it failed to charge the "essential element of 'voluntarily.'" [Doc. 800-1 at 3]. Like Count 29,

Count 62 tracked the statutory language of the alleged offense, which uses the word "knowingly," not "voluntarily." *See* [Doc. 290 at 72]; 18 U.S.C. § 1956(h). Further, the Eleventh Circuit "ha[s] long held that the term 'knowingly' means that the act was performed voluntarily and intentionally, and not because of a mistake or accident." *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002). Count 62 thus sufficiently alleged the charged offense even though it did not include the word "voluntarily." *Moore*, 954 F.3d at 1332.

For the above reasons, Count 69 of the SSI was not defective. As a result, counsel did not perform deficiently by failing to file a motion to dismiss on this basis. *Denson*, 804 F.3d at 1342; *Freeman*, 536 F.3d at 1233. Dixon, therefore, cannot establish an ineffective assistance of counsel claim based on this argument.

    2.    *Claim 2*

In Claim 2, Dixon argues that his trial counsel provided him with ineffective assistance by "failing to object to him pleading guilty to Counts 29 and 62, in which were constructive[ly] amended through Guilty Plea appraisal of the essential elements[.]" [Doc. 800-1 at 7–11]. According to Dixon, when counsel for the Government stated the elements of the offenses during Dixon's plea hearing, those elements differed from the allegations contained in the SSI. [*Id.*]. Although Dixon offers citations to the SSI and to the plea hearing transcript, he does not specify what

10

the alleged constructive amendments were other than to say that "the Government appraisal of the essential elements as it relates to Count 29, and 62, is actually different than what is charged in the Second Superseding Indictment." [*Id.* at 9]. In his reply, Dixon argues for the first time that counsel for the Government constructively amended the SSI by stating during the plea hearing that Dixon knew the identifying information at issue belonged to a real person, even though the SSI did not contain that allegation. [Doc. 1070 at 9–10].

"A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Philpot*, 773 F. App'x 583, 589 (11th Cir. 2019) (internal citation omitted). Setting aside the fact that Dixon raised his only specific argument for the first time in his reply, as explained above, the SSI tracks the statutory language and charges that Dixon "did knowingly possess and use . . . a social security number and date of birth belonging to 'S.R.,'" a real person. [Doc. 290 at 53]. Dixon does not point to anything in the elements as stated during his plea hearing that broadened the possible bases for conviction. Dixon, therefore, fails to show that the statements by counsel for the Government during the plea hearing constructively amended the SSI.

As discussed above, Dixon has not shown that the SSI was constructively amended. Dixon's counsel, therefore, did not perform deficiently by failing to object to the alleged constructive amendment during the plea hearing. *Denson*, 804 F.3d at 1342; *Freeman*, 536 F.3d at 1233. Dixon consequently cannot establish an ineffective assistance of counsel claim based on this argument.

B.   *Claim 3*

In Claim 3, Dixon argues that he is actually innocent of aggravated identity theft as charged in Count 29 of the SSI, based on an intervening change in the law. [Doc. 800-1 at 12–15]. To support this argument, Dixon cites *Dubin v. United States*, 599 U.S. 110 (2023). In *Dubin*, the Supreme Court clarified the scope of § 1028A and explained that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal." 599 U.S. at 131.

The Government argues that the appeal waiver in Dixon's guilty plea agreement bars Claim 3. [Doc. 986 at 7]. Alternatively, the Government argues that Claim 3 is procedurally defaulted because Dixon did not raise it on direct appeal, and that Dixon cannot show cause and prejudice (or actual innocence) to excuse the default. [*Id.*].

Dixon argues that this challenge was not procedurally defaulted, but he does not address the waiver argument. *See* [Doc. 1070 at 12–13]. Dixon's guilty plea agreement contained a provision that stated:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to) motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the District Court. Claims that the Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

[Doc. 519-1 at 15].

The Court discussed the waiver provision with Dixon during Dixon's plea hearing. [Doc. 642 at 24–25]. The Court explained the rights that Dixon would ordinarily have to appeal or to file a motion to vacate under 28 U.S.C. § 2255. [*Id.* at 24–25]. The Court told Dixon that in his plea agreement, Dixon had "for the most part given up these rights." [*Id.* at 25]. The Court advised Dixon that under the waiver provision, Dixon would be waiving his right to appeal or collaterally attack his conviction or sentence except in three specific circumstances: if there was an upward departure or variance above the Sentencing Guidelines range as calculated

13

by the Court, if the Government filed an appeal for any reason, or if Dixon asserted claims of constitutionally ineffective assistance of counsel. [*Id.*]. The Court advised Dixon, "But aside from these three very narrow circumstances, you will have no right of appeal and will be essentially bound by my decision." [*Id.*].

The Court then asked Dixon whether he understood. [Doc. 642 at 25]. Dixon answered affirmatively. [*Id.*]. The Court also asked Dixon's counsel whether he had "reviewed those rights with your client such that you're comfortable that he understands both his rights and waiver of those rights." [*Id.*]. Dixon's counsel responded, "Yes, your Honor." [*Id.*].

"An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005). An appeal waiver "'will be enforced if the government demonstrates *either*: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." *Id.* (quoting *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997)). Here, the record demonstrates that the Court "specifically questioned [Dixon] about the waiver during the plea colloquy." *Id.* The appeal waiver, therefore, is enforceable. *Id.*

The record also demonstrates that Dixon understood the full significance of the appeal waiver. When the Court asked Dixon whether Dixon understood that aside from three very narrow circumstances, he would have no right of appeal and would essentially be bound by the Court's decision, Dixon responded, "Yes, sir." [Doc. 642 at 25]. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Because Dixon "made statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (internal quotation omitted). Dixon has not shown that his statements were false, and the record consequently demonstrates that Dixon understood the appeal waiver provision.

For the above reasons, the appeal waiver is valid and enforceable. The appeal waiver, therefore, bars Claim 3. Dixon consequently is not entitled to relief on Claim 3.

C.  *Evidentiary Hearing Request*

Dixon requests an evidentiary hearing on his Motion to Vacate. [Doc. 800-1 at 16]. A court, however, is not required to hold an evidentiary hearing every time a Section 2255 claim is raised. *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989). Instead, a federal habeas corpus petitioner is entitled to an evidentiary

hearing only where the petitioner alleges facts that, if proven, would entitle the petitioner to relief. *Id.* A court also is not required to hold an evidentiary hearing when "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the record conclusively shows that Dixon is entitled to no relief; a hearing, therefore, is not required. *See* 28 U.S.C. § 2255(b).

## IV.  CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.§ 2253(c)(2)." 28 U.S.C. foll. § 2255, Rule 11(a). Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a [motion to vacate] on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

I **RECOMMEND** that a certificate of appealability be denied because the resolution of the issues presented is not debatable. If the district judge adopts this recommendation and denies a certificate of appealability, Dixon is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

**V.   CONCLUSION**

For the reasons stated above, I **RECOMMEND** that the Motion to Vacate [Doc. 800] be **DENIED**, that a certificate of appealability be **DENIED**, and that civil action number 1:24-cv-99-JPB-CMS be **CLOSED**.

**SO RECOMMENDED**, this 30th day of September, 2024.

_____
Catherine M. Salinas
United States Magistrate Judge

17